# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| SEANEKA RACHELLE ZINN | * | CIVIL ACTION NO. 09-1631 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Seaneka Rachelle Zinn, born January 28, 1974, filed an application for supplemental security income payments on July 16, 2007, alleging disability since June 4, 1997, due to status-post back surgery, disorder of the cervical and lumbar spines, and headaches.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F. R. Civ. P.  52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Urgent Care of Lafayette dated August 4, 2006 to August 6, 2007**.  On August 28, 2006, claimant complained of low back and cervical pain.  (Tr. 184).  She rated her pain as 3 out of 9 with medications.  She did not complain of headaches.

On examination, claimant was tender to palpation in the cervical and lumbar spines.  (Tr. 185).  She had positive spasm, and radiation into the upper and lower extremities.  Range of motion was decreased.

The assessment was cervical lumbar back pain and neck syndrome.  Dr. Robert Marshall prescribed Lortab, Soma, and Xanax.  (Tr. 183, 185).

On September 26, 2006, claimant continued to complain of pain. (Tr. 182). She also complained of headaches.  She rated her pain as 8 without medications and 1 with medications.  Prevacid was added.  (Tr. 180, 182).

On February 12, 2007, claimant complained of low back pain.  (Tr. 163). She rated the pain without medicine as 8 and with medicine as 3.  She admitted to headaches, but denied other symptoms.

On examination, claimant's lumbar spine was moderately tender to palpation.  She was experiencing spasms of the lower back muscles.  She had radiation of numbness and tingling into the left leg, and decreased range of motion of the back.

Claimant's diagnosis was low back pain. Dr. Marshall continued her medications, noting that she was getting adequate relief from her current regimen.

Claimant's condition was unchanged on her next visits, except for complaints of nausea and vomiting on April 6, 2007.  (Tr. 149, 154, 156, 158, 160).  On cervical spine exam, she was moderately tender to palpation, was experiencing spasms, had radiation of numbness and tingling into her left arm and legs, and decreased range of motion of her neck.  (Tr. 160).

Claimant was prescribed Phenergan as needed for nausea, and Fiorinol as needed for headache.  (Tr. 158).  Xanax for anxiety was switched to Valium because of drowsiness.  (Tr. 156, 158).  Once changed, she denied any side effects from her medicines.  (Tr. 154, 156).

**(2) Physical Residual Functional Capacity ("RFC") Assessment dated August 15, 2007**.  The medical consultant found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently.  (Tr. 190).  She could stand/walk and sit about six hours in an eight-hour workday.  She had unlimited push/pull

ability.  She could occasionally perform all postural activities, except that she could never climb ladders, ropes, or scaffolds.  (Tr. 191).

Dr. Charles Lee affirmed this determination on August 16, 2007.  (Tr. 235).

**(3) Records from American Legion Hospital dated August 20, 2007**.

Claimant was seen for lower back pain and bilateral leg numbness, and neck pain with bilateral upper extremity numbness and paresthesias, since a skiing accident 11 years prior.  (Tr. 198, 200).  A lumbar  MRI showed a posterior fusion at the T12 and L1 levels, a benign cyst at L1, and an annular tear with a mild disc protrusion at L5-S1.  (Tr. 199).  A cervical MRI revealed reversal of the normal cervical lordosis and mild to moderate degenerative changes at C4 through C6. (Tr. 200-01).

**(4) Claimant's Administrative Hearing Testimony**.  At the hearing on November 5, 2008, claimant was 34 years old.  (Tr. 23).  She testified that she was 5 feet tall and weighed 128 pounds.  (Tr. 24).  She stated that she smoked half a pack a day.  (Tr. 25).

Claimant had a GED.  (Tr. 26).  She had attended beauty school, but did not complete it because she had broken her back.  She was able to drive.  (Tr. 27).

Claimant testified that she had last worked part-time for two months as a gas station cashier in 2007.  (Tr. 28-29).  She stated that she was terminated because

4

she had fallen at work, and was a "high risk."  (Tr. 28).  Prior to that, she had sold debit life insurance.  (Tr. 31).

As to complaints, claimant testified that she had back problems and weakness in her legs.  (Tr. 32).  She also had headaches, stomach problems, anxiety, and kidney problems.  Additionally, she complained of memory problems.

Regarding medications, claimant testified that she was taking Valium, Lortab, Prevacid, Soma, Fiorinal, and Naprosyn.  (Tr. 33).  She also took Phenergan for nausea caused by her headaches.  She stated that she had migraines twice a day, which lasted up to an hour.  (Tr. 34).  She said that she had no side effects from her medications, and that they helped her.  (Tr. 46).

As to activities, claimant testified that she visited with her mother and helped her children with their homework.  (Tr. 40).  She stated that she went shopping with her mother about twice a month.  (Tr. 41).  She went to a restaurant every two or three months.  (Tr. 42).

Additionally, claimant's friends visited with her once a week.  She folded clothes while seated.  She was able to take care of her personal needs, but needed help putting on her pants when her legs bothered her.  (Tr. 43).  She watched television about five hours a day.  Additionally, she read the Bible, spiritual and mystery books.  (Tr. 44).

Regarding limitations, claimant testified that she could sit and read for about 30 minutes.  She slept three to four hours a night.  (Tr. 45).  She could stand and sit for about 15 to 20 minutes.  (Tr. 47).  She could not climb steps.

Additionally, claimant reported that she could reach forward, but not overhead.  She stated that she could lift about five pounds.  (Tr. 48).  She was able to stoop and squat, but needed help getting back up.  (Tr. 49).  She dropped things occasionally.  (Tr. 49-50).

Claimant also stated that she could concentrate and pay attention.  (Tr. 50).  She could follow simple instructions.  (Tr. 51).  She could interact and relate with supervisors and strangers, but had problems with co-workers.  (Tr. 51-52).  She was bothered by crowds, noise, smoke, dust, heat, cold, and pollen.  (Tr. 52-53).

**(5) Administrative Hearing Testimony of Lionel J. Bordelon, Vocational Expert ("VE")**.  Mr. Bordelon classified claimant's past work as an insurance collector as medium with an SVP of four.  (Tr. 57-58).  The ALJ posed a hypothetical in which he asked the VE to assume a claimant aged 33 to 34 with a GED, who had the ability to perform light work limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing/walking and sitting six hours out of eight, with pushing and pulling limited by the ability to lift and carry, no climbing, and occasional posturals.  (Tr. 59).  In response, Mr. Bordelon

6

testified that she would not be able to do her past work, but could work as an insurance clerk, of which there were 80,198 positions nationally and 1,450 statewide, and booth cashier, of which there were 1,931,092 positions nationally and 36,905 statewide, reduced to 15 percent.  (Tr. 59-60).

When the ALJ modified the hypothetical to assume a claimant who could lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk two hours out of eight; sit six hours out of eight; had limited push/pull ability due to the ability to lift and carry; occasional overhead reaching, and no vibrations, hazards, machinery or heights, the VE stated that such limitations would reduce the cashiers to 10 percent, and sales support to 15 percent.  (Tr. 60-61).

**(6) The ALJ's Findings are Entitled to Deference**.  Claimant argues that the ALJ erred: (1) in concluding that she could do light work on a regular basis, relying only on a residual functional capacity evaluation done by a state agency non-physician adjudicator; (2) in failing to evaluate and articulate reasons for failure to consider her complaints of disabling pain, and (3) in denying benefits to her without the benefit of any medical evidence by any consulting examiners.

As to the first argument, claimant asserts that the ALJ erred in relying "solely" on the RFC evaluation done by a state agency non-physician adjudicator to find that she could do a complete range of light work.  [rec. doc. 9, p. 2].

7

However, the decision reflects that the ALJ considered all of the medical evidence in the record, including the records from claimant's treating physician, Dr. Robert Marshall of Urgent Care of Lafayette, as well as the MRI reports from the American Legion Hospital.  (Tr. 13-14).  While the ALJ acknowledged that a state agency non-physician adjudicator had completed a physical RFC, she observed that a *physician*, Dr. Charles Lee, agreed with the light RFC.  (emphasis added). (Tr. 14, 235).  Accordingly, this argument lacks merit.

Next, claimant asserts that the ALJ failed to evaluate her complaints of disabling pain.  [rec. doc. 9, p. 4].  The ALJ noted that while claimant complained of headaches and disabling pain, the medical records did not support such finding. (Tr. 13).  This opinion is supported by the records from Dr. Marshall and the MRI reports, as well as claimant's own testimony.

To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing pain.  *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Id*.  Disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony.  *Chambliss v. Massanari*,

8

269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

Here, the lumbar MRI showed a mild disc protrusion at L5-S1, while the cervical MRI revealed mild to moderate degenerative changes.  (Tr. 199-201).  These findings do not meet the requirements of the listing for spinal disorders.[1]  Further, the record reflects that claimant responded to medical treatment for her pain.

Dr. Marshall opined that claimant was getting adequate relief from her medications without any side effects.  (Tr. 149, 152, 155, 156, 158, 160, 163).  At the hearing, claimant testified that her medicines helped her.  (Tr. 46).  If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability.  *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.

---

[1]The listing for disorders of the spine provides, in pertinent part, as follows:
1.04 *Disorders of the spine*: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).  20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04.

1987).  Thus, this argument lacks merit.

Next, claimant argues that the ALJ should have sent her for a consultative examination.  [rec. doc. 9, p. 2].  Under some circumstances, a consultative examination is required to develop a full and fair record.  *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987).  The decision to require such an examination is discretionary.  *Id*.  In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977), the Fifth Circuit stated  "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision."  (emphasis in original).  A claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry' under 20 C.F.R. § 416.1444."  *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989) (*quoting Jones*, 829 F.2d at 526).

In this case, evidence from claimant's treating physician at Urgent Care of Lafayette and the American Legion Hospital was available to enable the administrative law judge to make the disability decision.  Additionally, none of these doctors recommended a review.  *Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989) (no consultative exam required where claimant's testimony did not

indicate necessity for review, nor did any doctors recommend such review).  Given the evidence in the record, a consultative examination was not necessary.

Claimant also argues that, based on the hypotheticals to the VE, there would be no jobs available to her.  [rec. doc. 9, p. 4].  However, it is well established that the  ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ.  *See Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La.2000).  As the ALJ's hypotheticals to the vocational expert reasonably incorporated all disabilities of the claimant *recognized by the ALJ*, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference.  (emphasis added).  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to

furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION, 79 F.3D 1415 (5TH CIR. 1996).**

Signed January 12, 2011, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

12